**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| JANE DOE, | Case No.: |
| and | |
| JOHN DOE, | **CLASS ACTION COMPLAINT** |
| on behalf of themselves and all others similarly situated, | DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| vs. | |
| CENTERSTONE OF AMERICA, INC., an Indiana corporation, | |
| CENTERSTONE OF INDIANA, INC., an Indiana corporation, | |
| and | |
| CENTERSTONE OF TENNESSEE, INC., a Tennessee corporation, | |
| Defendants. | |

Plaintiffs Jane Doe and John Doe ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Centerstone of America, Inc., Centerstone of Indiana, Inc., and Centerstone of Tennessee, Inc. (collectively, "Centerstone" or "Defendants"), and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1.      Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard personal identifiable information that Defendants required from or created and stored for their patients as a condition or result of medical treatment, including without limitation, names, dates of birth, Social Security numbers, medical diagnoses or treatment

1

information, health insurance information, and/or client identification numbers (collectively, "personal identifiable information" or "PII"). Plaintiffs also allege Defendants failed to provide timely, accurate, and adequate notice to Plaintiffs and similarly situated current and former patients (collectively, "Class Members") that their PII had been lost and precisely what types of information was unencrypted and in the possession of unknown third parties.

2.     Defendants provide mental health and substance use disorder treatments in Indiana, Tennessee, Florida, and Illinois. In order to obtain medical treatment, Plaintiffs and other patients of Defendants entrust and provide to Defendants an extensive amount of PII. Defendants retain this information on computer hardware—even after the treatment relationship ends. Defendants assert that they understand the importance of protecting information.

3.     On or before August 25, 2020, Defendants determined that there had been unauthorized access to the email accounts of two of Defendants' employees between December 12, 2019 and December 16, 2019 (the "Data Breach").

4.     On or before August 25, 2020, Defendants learned that one of the email accounts accessed during the Data Breach contained the PII of Defendants' current and former patients, including Plaintiffs and Class Members.

5.     In a "Notice of Data Breach," dated October 22, 2020, Defendants advised that they were informing current and former patients of Defendants of the Data Breach.

6.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties to those individuals. Defendants admit that the unencrypted PII exposed to "unauthorized activity" included names, dates of birth, Social Security numbers, medical diagnoses or treatment information, health insurance information, and/or client identification numbers.

2

7.     The exposed PII of Defendants' current and former patients can be sold on the dark web.  Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Defendants' current and former patients face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

8.     This PII was compromised due to Defendants' negligent and/or careless acts and omissions and the failure to protect PII of their current and former patients.  In addition to Defendants' failure to prevent the Data Breach, after discovering the breach, Defendants waited several months to report it to the states' Attorneys General and affected individuals.

9.     As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect the PII of their current and former patients; (ii) warn their current and former patients of their inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

11.     Plaintiffs and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and significantly

(iv) the continued and certainly an increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

12.     Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that their current and former patients' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

13.     Plaintiff Jane Doe is a Citizen of Tennessee residing in Maury County, Tennessee. Ms. Doe received Centerstone of Tennessee, Inc.'s *Notice of Data Security Incident*, dated October 22, 2020, on or about that date. Because of the nature of the medical services provided to Plaintiff, she is filing this complaint under Jane Doe.

14.     Plaintiff John Doe is a Citizen of Tennessee residing in Maury County, Tennessee. Mr. Doe received Centerstone of Tennessee, Inc.'s *Notice of Data Security Incident*, dated October 22, 2020, on or about that date. Because of the nature of the medical services provided to Plaintiff, he is filing this complaint under John Doe.

15.     Defendant Centerstone of America, Inc. is a corporation organized under the laws

4

of Indiana, headquartered at 44 Vantage Way, Suite 400, Nashville, TN, with its principal place of business in Nashville, TN.

16.     Defendant Centerstone of Indiana, Inc. is a corporation organized under the laws of Indiana, headquartered at 645 South Rogers Street, Bloomington, IN, with its principal place of business in Bloomington, IN.

17.     Defendant Centerstone of Tennessee, Inc. is a corporation organized under the laws of Tennessee, headquartered at 44 Vantage Way, Suite 400, Nashville, TN, with its principal place of business in Nashville, TN.

18.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

19.     All of Plaintiffs' claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

20.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member (including named Plaintiff Jane Doe, a Citizen of Tennessee) is a citizen of a state different from Defendants to establish minimal diversity.

21.     The Middle District of Tennessee has personal jurisdiction over Defendants named in this action because Defendants and/or their parents or affiliates are headquartered in this District

and Defendants conduct substantial business in Tennessee and this District through their headquarters, offices, parents, and affiliates.

22.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants and/or their parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

***Background***

23.     Defendants provide mental health and substance user disorder treatments Indiana, Tennessee, Florida, and Illinois.  Defendants serve more than 140,000 clients per year at more than 170 locations.

24.     Plaintiffs and Class Members treated by Defendants were required to provide some of their most sensitive and confidential information, including names, dates of birth, Social Security numbers, health insurance information, and other personal identifiable information, which is static, does not change, and can be used to commit myriad financial crimes.

25.     In providing treatment to Plaintiffs and Class Members, Defendants created and stored additional sensitive personal information about Plaintiffs and Class Members, including medical diagnoses, treatment information, and client account numbers.

26.     Plaintiffs and Class Members, as current and former patients, relied on these sophisticated Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Defendants' current and former patients demand security to safeguard their PII.

27.     Defendants had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

6

*The Data Breach*

28.     Beginning on or about October 22, 2020, Defendants sent their current and former

patients a *Notice of Data Security Incident*.[1]  Defendants informed the recipients of the notice that:

> I am writing to inform you of a data security incident that may have
> affected your personal information.  At [Centerstone], we take the
> privacy and security of your personal information very seriously.
> We are contacting you to notify you that this incident occurred and
> inform you about steps you can take to ensure your information is
> protected, included enrolling in the complimentary identity
> protection services we are making available to you.
>
> **What Happened?**    Centerstone learned of unusual activity
> involving an employee's email account.  Upon discovering this
> activity, we immediately launched an investigation.  In the course of
> this investigation, we engaged an independent computer forensics
> firm to determine what happened and whether personal information
> had been accesses or acquired without authorization.  The forensic
> investigation concluded that two employee email accounts had been
> accessed without authorization between December 12 and
> December 16, 2019.  On August 25, 2020, we learned that some of
> your information was contained without one of these email
> accounts.  As soon as we discovered that the incident impacted
> personal information, we immediately conducted a diligent search
> to identify current mailing addresses to that we could notify
> potentially impacted individuals.
>
> Please note that this unauthorized access was limited to information
> transmitted via email and did not affect any other Centerstone
> information systems.  We are not aware of the misuse of any
> personal information that may have been affected by this incident.
>
> **What Information Was Involved?**    The affected information
> pertaining to you may have included the following: Name, date of
> birth, Social Security number, medical diagnosis or treatment
> information, health insurance information, and/or client
> identification number.[2]

29.     On or about October 22, 2020, Defendants sent data breach notifications to various

---

[1] *See Notice of Data Security Incident*, a true and correct copy of which is attached hereto as
Exhibit 1 ("Ex. 1").
[2] Ex. 1, p.1.

7

state Attorneys General, including Vermont's Attorney General TJ Donovan, signed by David C. Guth, Jr., Centerstone's Chief Executive Officer.[3]

30.     Defendants admitted in the *Notice of Data Security Incident* and the letters to the Attorneys General that unauthorized third persons accessed an email account that contained sensitive information about current and former patients, including names, dates of birth, Social Security numbers, medical diagnoses or treatment information, health insurance information, and/or client identification numbers.

31.     In response to the Data Breach, Defendants claim that they "immediately launched an investigation, we engaged an independent computer forensics firm to determine what happened and whether personal information had been accesses or acquired without authorization…. We have also implemented additional safeguards to help ensure the security of our email environment and to reduce the risk of a similar incident occurring in the future."[4]

32.     Plaintiffs' and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of the affected current and former patients. Unauthorized individuals can easily access the PII of Defendants' current and former patients.

33.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for current and former patients, causing Plaintiffs' and Class Members' PII to be exposed.

***Defendants Acquire, Collect and Store Plaintiffs' and Class Members' PII.***

34.     Defendants acquired, collected, and stored their current and former patients' PII.

35.     As a condition of maintaining treatment with Defendants, Defendants require that

---

[3] Ex. 2.
[4] Exs. 1, 2.

8

their patients entrust Defendants with highly confidential PII.

36.     By obtaining, collecting, and storing Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

37.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.  Plaintiffs and the Class Members, as current and former patients, relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

38.     Defendants could have prevented this Data Breach by properly securing and encrypting Plaintiffs' and Class Members' PII.  Or Defendants could have destroyed the data, especially old data from former patients that Defendants had no legal duty to retain.

39.     Defendants' negligence in safeguarding their current and former patients' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

40.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and the proposed Class from being compromised.

41.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[5] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's

---

[5] 17 C.F.R. § 248.201 (2013).

license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[6]

42.     The ramifications of Defendants' failure to keep secure their current and former patients' PII are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

43.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[7] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[8] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[9]

44.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your

---

[6] *Id.*
[7] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 26, 2021).
[8] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Jan. 26, 2021).
[9] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Jan. 26, 2021).

10

name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

45.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

46.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[11]

47.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, date of birth, and Social Security number.

48.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the

---

[10] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Jan. 26, 2021).
[11] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Jan. 26, 2021).

black market."[12]

49.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

50.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

51.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

52.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding their current and former patients' PII, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Defendants' current and former patients as a result of a breach.

53.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will

---

[12] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Jan. 26, 2021).
[13] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed Jan. 26, 2021).

continue to incur such damages in addition to any fraudulent use of their PII.

54.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' network, amounting to potentially thousands or tens or hundreds of thousands of individuals' detailed, personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

55.     To date, Defendants have offered their current and former patients only one year of identity theft protection services through a single data breach and recovery services expert, IDX. The offered service is inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

56.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of their current and former patients.

### *Plaintiff Jane Doe's Experience*

57.     From in or about 1995 to in or about 2013, Plaintiff Jane Doe was a patient of Centerstone of Tennessee, Inc.  As a condition for treatment, Defendants required that she provide her PII, including but not limited to her name, date of birth, Social Security number, and health insurance information.

58.     Ms. Doe received the Notice of Data Security Incident, dated October 22, 2020, on or about that date.

59.     As a result of the Notice of Data Security Incident, Ms. Doe spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Security Incident, exploring credit monitoring and identity theft insurance options, signing up and routinely monitoring the credit monitoring offered by Defendants, and self-

monitoring her accounts. This time has been lost forever and cannot be recaptured.

60.     Additionally, Ms. Doe is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

61.     Ms. Doe stores any documents containing her PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

62.     Ms. Doe suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Ms. Doe entrusted to Defendants for the purpose of her treatment, which was compromised in and as a result of the Data Breach.

63.     Ms. Doe suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

64.     Ms. Doe has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security number, in combination with her name and date of birth, being placed in the hands of unauthorized third-parties and possibly criminals.

65.     Ms. Doe has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

### *Plaintiff John Doe's Experience*

66.     From in or about 2002 to 2007, Plaintiff John Doe was a patient of Centerstone of Tennessee, Inc.   As a condition for treatment, Defendants required that he provide his PII, including but not limited to his name, date of birth, Social Security number, and health insurance information.

14

67. Mr. Doe received the Notice of Data Security Incident, dated October 22, 2020, on or about that date.

68. As a result of the Notice of Data Security Incident, Mr. Doe spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Security Incident, exploring credit monitoring and identity theft insurance options, signing up and routinely monitoring the credit monitoring offered by Defendants, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

69. Additionally, Mr. Doe is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

70. Mr. Doe stores any documents containing his PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

71. Mr. Doe suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Mr. Doe entrusted to Defendants for the purpose of his treatment, which was compromised in and as a result of the Data Breach.

72. Mr. Doe suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

73. Mr. Doe has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, in combination with his name and date of birth, being placed in the hands of unauthorized third-parties and possibly criminals.

74. Mr. Doe has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future

breaches.

## V. CLASS ALLEGATIONS

75.     Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

76.     The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All individuals whose PII was compromised in the data breach first announced by Defendants on or about October 22, 2020 (the "Nationwide Class").

77.     Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs Jane Doe and John Doe assert claims on behalf of a separate statewide subclass, defined as follows:

> All individuals who are residents of Tennessee and whose PII was compromised in the data breach first announced by Defendants on or about October 22, 2020 (the "Tennessee Class").

78.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

79.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

80.     Numerosity, Fed. R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") are so

16

numerous that joinder of all members is impracticable. Defendants have identified thousands of current and former patients whose PII may have been improperly accessed in the Data Breach, and the Class is apparently identifiable within Defendants' records.

81.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.  Whether and to what extent Defendants had a duty to protect the PII of Plaintiffs and Class Members;

b.  Whether Defendants had respective duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c.  Whether Defendants had respective duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

d.  Whether Defendants failed to adequately safeguard the PII of Plaintiffs and Class Members;

e.  Whether and when Defendants actually learned of the Data Breach;

f.  Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendants adequately addressed and fixed the vulnerabilities which

17

permitted the Data Breach to occur;

    j.   Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

    k.   Whether Plaintiffs and Class Members are entitled to actual, damages, and/or statutory damages as a result of Defendants' wrongful conduct;

    l.   Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

    m.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

82.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

83.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

84.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the

damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

85.     Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

86.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

19

87.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

88.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

89.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Amended Complaint.

90.     Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

91.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a.     Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      b.     Whether Defendants breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      c.     Whether Defendants failed to comply with their own policies and applicable

laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendants on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e. Whether Defendants breached the implied contract;

f. Whether Defendants adequately, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i. Whether Class Members are entitled to actual damages, statutory damages, injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

## COUNT I
### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class)**

92. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91.

93. As a condition of their treatment by Defendants, Defendants' current and former patients were obligated to provide Defendants with certain PII, including their names, dates of birth, Social Security numbers, and health insurance information and Defendants created and stored additional information about Plaintiffs, including medical diagnoses, treatment information, and client account numbers.

21

94.     Plaintiffs and the Class Members entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

95.     Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

96.     Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their current and former patients' PII involved an unreasonable risk of harm to Plaintiffs and Class Members, even if the harm occurred through the criminal acts of a third party.

97.     Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiffs' and Class Members' information in Defendants' possession was adequately secured and protected.

98.     Defendants also had a duty to exercise appropriate clearinghouse practices to remove former patients' PII they were no longer required to retain pursuant to regulations.

99.     Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII.

100.    Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiffs and Class Members. That special relationship arose because Plaintiffs and Class Members entrusted Defendants with their confidential PII, a necessary part of obtaining treatment from Defendants.

101.    Defendants were subject to an "independent duty," untethered to any contract

22

between Defendants and Plaintiffs or Class Members.

102.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

103.    Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendants' systems.

104.    Defendants' own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decisions not to comply with industry standards for the safekeeping of Plaintiffs' and Class Members' PII, including basic encryption techniques freely available to Defendants.

105.    Plaintiffs and the Class Members had no ability to protect their PII that was in, and possibly remains in, Defendants' possession.

106.    Defendants were in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

107.    Defendants had and continue to have a duty to adequately disclose that the PII of Plaintiffs and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

23

108.    Defendants had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and Class Members.

109.    Defendants have admitted that the PII of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

110.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and Class Members during the time the PII was within Defendants' possession or control.

111.    Defendants improperly and inadequately safeguarded the PII of Plaintiffs and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

112.    Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect their current and former patients' PII in the face of increased risk of theft.

113.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former patients' PII.

114.    Defendants breached their duty to exercise appropriate clearinghouse practices by failing to remove former patients' PII they were no longer required to retain pursuant to regulations.

115.    Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiffs and Class Members the existence and scope of the Data Breach.

116.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiffs and

24

Class Members, the PII of Plaintiffs and Class Members would not have been compromised.

117. There is a close causal connection between Defendants' failure to implement security measures to protect the PII of Plaintiffs and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiffs and the Class. Plaintiffs' and Class Members' PII was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

118. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

119. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

120. Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

121. Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

122. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

25

123.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the current and former patients' PII in their continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

124.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

125.    Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and is subject to further

unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession.

## COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiffs and the Nationwide Class)

126.    Plaintiffs and Class Members re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91.

127.    Defendants required Plaintiffs and Class Members to provide their personal information, including names, dates of birth, Social Security numbers, health insurance information, and other personal information as a condition of their treatment.

128.    As a condition of Plaintiffs' and Class Members' treatment with Defendants, they provided their personal information to Defendants and Defendants created and stored additional information about Plaintiffs, including medical diagnoses, treatment information, and client account numbers. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been breached, compromised, or stolen.

129.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

130.    Defendants breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect their personal information and by failing to provide timely and accurate notice to them that personal was compromised as a result of the data breach.

131.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing,

27

imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT III
### Invasion of Privacy
### (On Behalf of Plaintiffs and the Nationwide Class)

132.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91.

133.    Plaintiffs and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

134.    Defendants owed a duty to their current and former patients, including Plaintiffs and Class Members, to keep their PII contained as a part thereof, confidential.

135.    Defendants failed to protect and released to unknown and unauthorized third parties the PII of Plaintiffs and Class Members.

136.    Defendants allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and Class Members, by way of Defendants' failure to protect the PII.

137.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and Class Members is highly offensive to a reasonable person.

28

138. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class Members disclosed their PII to Defendants, or allowed Defendants to create and store their PII, as part of their treatment by Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

139. The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiffs and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

140. Defendants acted with a knowing state of mind when they permitted the Data Breach to occur because it was with actual knowledge that their information security practices were inadequate and insufficient.

141. Because Defendants acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and Class Members.

142. As a proximate result of the above acts and omissions of Defendants, the PII of Plaintiffs and Class Members was disclosed to third parties without authorization, causing Plaintiffs and Class Members to suffer damages.

143. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and Class Members have no adequate remedy

at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

<u>COUNT IV</u>
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

144.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91.

145.     At all times during Plaintiffs' and Class Members' interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' PII that Plaintiffs and Class Members treated by Defendants provided to Defendants or allowed Defendants to create and store.

146.     As alleged herein and above, Defendants' relationship with Plaintiffs and Class Members was governed by terms and expectations that Plaintiffs' and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

147.     Plaintiffs and Class Members treated by Defendants provided Plaintiffs' and Class Members' PII to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the PII to be disseminated to any unauthorized third parties.

148.     Plaintiffs and Class Members treated by Defendants also provided Plaintiffs' and Class Members' PII to Defendants with the explicit and implicit understandings that Defendants would take precautions to protect that PII from unauthorized disclosure.

149.     Defendants voluntarily received in confidence Plaintiffs' and Class Members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

30

150.    Due to Defendants' failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

151.    As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiffs and Class Members have suffered damages.

152.    But for Defendants' disclosure of Plaintiffs' and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.  Defendants' Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' PII as well as the resulting damages.

153.    The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Defendants' unauthorized disclosure of Plaintiffs' and Class Members' PII. Defendants knew or should have known their methods of accepting and securing Plaintiffs' and Class Members' PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and Class Members' PII.

154.    As a direct and proximate result of Defendants' breach of their confidence with Plaintiffs and Class Members, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on

31

credit reports; (vii) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of current and former patients; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

155.    As a direct and proximate result of Defendants' breaches of confidence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
### Violation of Tennessee Identity Theft Deterrence Act of 1999
### (Tenn. Code Ann. § 47-18-2107)
### (On Behalf of Plaintiffs Jane Doe and John Doe and the Tennessee Class)

156.    Plaintiffs Jane Doe and John Doe re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91.

157.    Tenn. Code Ann. § 47-18-2107(a)(4) defines "Personal information" as follows:

"Personal information":

(A) Means an individual's first name or first initial and last name, in combination with any one (1) or more of the following data elements:

(i) Social security number;

(ii) Driver license number; or

(iii) Account, credit card, or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; and

32

(B) Does not include information that is lawfully made available to the general public from federal, state, or local government records or information that has been redacted, or otherwise made unusable.

158. Tenn. Code Ann. § 47-18-2107(a)(1) defines "Breach of system security" as follows:

"Breach of system security":

(A) Means the acquisition of the information set out in subdivision (a)(1)(A)(i) or (a)(1)(A)(ii) by an unauthorized person that materially compromises the security, confidentiality, or integrity of personal information maintained by the information holder:

(i) Unencrypted computerized data; or

(ii) Encrypted computerized data and the encryption key; and

(B) Does not include the good faith acquisition of personal information by an employee or agent of the information holder for the purposes of the information holder if the personal information is not used or subject to further unauthorized disclosure.

159. Tenn. Code Ann. § 47-18-2107(e) requires notification of "a breach of system security" as follows:

Following discovery or notification of a breach of system security by an information holder, the information holder shall disclose the breach of system security to any resident of this state whose personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure must be made no later than forty-five (45) days from the discovery or notification of the breach of system security, unless a longer period of time is required due to the legitimate needs of law enforcement, as provided in subsection (d).

160. Tenn. Code Ann. § 47-18-2107(e) provides that notice "may be provided by one (1) of the following methods":

(1) Written notice;

33

(2) Electronic notice, if the notice provided is consistent with the provisions regarding electronic records and signatures set forth in 15 U.S.C. § 7001 or if the information holder's primary method of communication with the resident of this state has been by electronic means; or

(3) Substitute notice, if the information holder demonstrates that the cost of providing notice would exceed two hundred fifty thousand dollars ($250,000), that the affected class of subject persons to be notified exceeds five hundred thousand (500,000) persons, or the information holder does not have sufficient contact information and the notice consists of all of the following:

> (A) Email notice, when the information holder has an email address for the subject persons;
>
> (B) Conspicuous posting of the notice on the information holder's website, if the information holder maintains a website page; and
>
> (C) Notification to major statewide media.

161.    The Data Breach described in this Complaint constitutes a "breach of system security" of Defendants.

162.    As alleged above, Defendants unreasonably delayed informing Plaintiffs and the Tennessee Class about the Data Breach, affecting the confidential and non-public PII of Plaintiffs and the Tennessee Class after Defendants knew the Data Breach had occurred.

163.    Defendants failed to disclose to Plaintiffs and the Tennessee Class, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII when Defendants knew or reasonably believed such information had been compromised.

164.    Defendants' ongoing business interests gave Defendants incentive to conceal the Data Breach from the public to ensure continued revenue.

34

165. As a result of Defendants' violation of Tennessee law, Plaintiffs and the Tennessee Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, including securing identity theft protection, or requesting a credit freeze. These measures would have prevented some or all of the damages Plaintiffs and the Tennessee Class suffered because their stolen information would not have any value to identity thieves.

166. As a result of Defendants' violation of Tennessee law, Plaintiffs and the Tennessee Class have suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

167. Plaintiffs and the Tennessee Class seek all remedies available under Tennessee law, including, but not limited to damages the Plaintiffs and the Tennessee Subclass suffered as alleged above, as well as equitable relief.

### COUNT VI
**Violation of Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. § 47-18-101 *et seq.*)**
**(On Behalf of Plaintiffs Jane Doe and John Doe and the Tennessee Class)**

168. Plaintiffs Jane Doe and John Doe re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 91 and 157 through 166.

169. Tenn. Code Ann. § 47-18-2106 provides that a violation of Tennessee's Identity Theft Deterrence Act of 1999, which includes the notification requirements in Tenn. Code Ann. § 47-18-2107, is a violation of the Tennessee Consumer Protection Act.

170. Defendants violated the Tennessee Consumer Protection Act by violating the notification requirements in Tenn. Code Ann. § 47-18-2107.

171.    Defendants' violation caused Plaintiffs to suffer a loss of money, property, or another thing of value, including the benefit of timely notice of the Data Breach and the opportunity to mitigate Plaintiffs' damages resulting therefrom.

172.    Defendants' violation caused (i) additional lost or diminished value of Plaintiff's PII; (ii) additional out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) additional lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the additional continued and certainly increased risk to their PII.

173.    Plaintiffs seek actual damages resulting from Defendants' violation; treble damages because Defendants' violation was willful and knowing; and a declaratory judgment that Defendants' acts and practices violate the Tennessee Consumer Protection Act of 1977.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, request judgment against Defendants and that the Court grant the following:

A.    For an Order certifying the Nationwide Class and the Tennessee Class as defined herein, and appointing Plaintiffs and their Counsel to represent the Class;

B.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and the Class Members;

C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and

36

Class Members, including but not limited to an order:

i.   prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii.  requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.  requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiffs and Class Members' personal identifying information;

v.   prohibiting Defendants from maintaining Plaintiffs' and Class Members' personal identifying information on a cloud-based database;

vi.  requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

37

viii.    requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x.    requiring Defendants to conduct regular database scanning and securing checks;

xi.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.    requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendants policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendants to implement, maintain, regularly review, and revise as

38

necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

D. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand that this matter be tried before a jury.

39

Date: January 27, 2021                    Respectfully Submitted,


                                    _____/s/Kathryn E. Barnett_____
                                    Kathryn E. Barnett (BPR#15361)
                                    **MORGAN & MORGAN – NASHVILLE**
                                    810 Broadway, Suite 105
                                    Nashville, Tennessee 37203
                                    Phone: (615) 490-0943
                                    kbarnett@forthepeople.com

                                    JOHN A. YANCHUNIS
                                    (*Pro Hac Vice application forthcoming*)
                                    RYAN D. MAXEY
                                    (*Pro Hac Vice application forthcoming*)
                                    **MORGAN & MORGAN**
                                    201 N. Franklin Street, 7th Floor
                                    Tampa, Florida 33602
                                    (813) 223-5505
                                    jyanchunis@ForThePeople.com
                                    rmaxey@ForThePeople.com